## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

JANET GUZMAN, YODIT YEMANE a/k/a JODIE JOE, LUCY PINDER, TIFFANY KELLER, ROSA ACOSTA, and MARIANA DAVALOS,

*Plaintiffs*,

v.

PAGA, INC d/b/a VENU NIGHTCLUB

*Defendant*.

Civil Action No.:

**COMPLAINT**

**(Jury Trial Demanded)**

Plaintiffs JANET GUZMAN, YODIT YEMANE a/k/a JODIE JOE, LUCY PINDER, TIFFANY KELLER, ROSA ACOSTA, and MARIANA DAVALOS, (collectively, "Plaintiffs"), file this Complaint against PAGA, INC, d/b/a VENU NIGHTCLUB ("Defendant") respectfully allege as follows:

### BACKGROUND

1.      This is an action for damages and injunctive relief relating to Defendant's misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, VENU NIGHTCLUB located at 100 Warrenton St, Boston, Massachusetts 02116 (hereinafter referred to as the "Night Club" or "Venu Nightclub").

2.      As detailed below, Defendant's misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association; b) Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) - False Advertising; c) Common Law Right of Privacy; d) Violation of M.G.L. c. 214 § 1B: Right of Privacy; e) Violation of M.G.L. c. 214 § 3A: Unauthorized Use of Individual's Name, Portrait, or Picture; f) Common Law Right of Publicity;

1

g) Violation of M.G.L. c. 93A § 11: Unfair Trade Practices; h) Defamation; i) Negligence and Respondeat Superior; j) Conversion; k) Unjust Enrichment; and l) Quantum Meruit.

3.       In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant from using any of their Images in any way and through any medium.

## JURISDICTION & VENU NIGHTCLUBE

4.        This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.       This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.       Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.       According to publicly available records, Defendant Paga, Inc, is a corporation formed under the laws of the state of Massachusetts, with its principal place of business located at 100 Warrenton St, Boston, Massachusetts, 02116. Upon information and belief, Paga, Inc operates Venu Nightclub, which is located at 100 Warrenton St, Boston, Massachusetts 02116.

8.       Venu Nightclub is proper in the United States District Court for the District of Massachusetts because Defendant's principal place of business is located in Boston, Massachusetts, Suffolk County.

9.       A significant portion of the alleged causes of action arose and accrued in Boston, Massachusetts and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Boston, Massachusetts.

## PARTIES

*Plaintiffs*

10.     Plaintiff Janet Guzman ("Guzman") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Yodit Yemane a/k/a Jodie Joe ("Yemane") is a well-known professional

model, and a resident of Los Angeles County, California.

12.     Plaintiff Lucy Pinder ("Pinder") is a well-known professional model, and a resident of England.

13.     Plaintiff Tiffany Keller ("Keller") is a well-known professional model, and a resident of Los Angeles County, California.

14.     Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Columbia.

***Defendant***

16.     Defendant, Paga, Inc., is a corporation formed under the laws of the state of Massachusetts and registered to conduct business in Massachusetts. During times relevant to this action, Paga, Inc. operated Venu Nightclub.

17.     Service of process may be perfected upon Defendant Paga, Inc. by serving the registered agent for service of process, Sonny Paige, who can be located at 100 Warrenton Street, Boston, MA 02116.

## FACTUAL ALLEGATIONS

18.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

19.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

20.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendant to make it appear that they worked at, endorsed, or were otherwise associated or

affiliated with Defendant.

21.    In the case of each Plaintiff, this apparent claim was false.

22.    Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

23.    No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

24.    Further, in certain cases Defendant misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

25.    Guzman is a social media star who is widely known for her self-titled Instagram page. She has gained popularity there for her modeling and lifestyle photos, surpassing over 2 million followers. She's widely known to be Fashion Nova's number 1 featured talent. She mostly promotes the clothes of the Fashion Nova clothing brand on her Instagram and has also appeared on the Fashion Nova Billboard located at Melrose and Fairfax (California). She was featured in an exclusive video interview with Fashion Nova in March of 2022. She has also seen her janetguzman_TikTok channel become widely popular, with her videos on the platform earning over 1.9 million total likes. She also runs a popular OnlyFans subscription account and a travel/lifestyle/fashion vlog on YouTube.[1]

26.    Upon information and belief, Guzman is depicted in the photo in Exhibit "A" to promote Venu Nightclub on related social media accounts. This Image was intentionally altered to make it appear that Guzman was either an employee working at Venu Nightclub, that she endorsed Venu Nightclub, or that she was otherwise associated or affiliated with Venu Nightclub.

---

[1] In the modeling world and talent industry (in general), the number of online Instagram "followers", X "followers", and or Facebook "likes" is a strong factor in determining a model's earning capacity.

27.    Guzman has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

28.    Yemane is a social media and modeling influencer with well over 1 million followers on Instagram, while she has appeared in music videos with Tyga and appeared on Nick Cannons' Wild N Out and worked for Pretty Little Thing Fashion House this model of Eritrean descent Is mostly known and now famous in the fashion industry for her near decade long association and Brand Ambassador with Fashion Nova (which has more than 10% of the USA fashion market) she was the first model to have her own clothing line collaboration with Fashion Nova, and the 34 year old is regarded as one of the highest paid models in the industry

29.    Upon information and belief, Yemane is depicted in the photo in Exhibit "B" to promote Venu Nightclub on its Facebook page. This Image was intentionally altered to make it appear that Yemane was either an employee working at Venu Nightclub, that she endorsed Venu Nightclub, or that she was otherwise associated or affiliated with Venu Nightclub.

30.    Yemane has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.    Pinder is, and at all times relevant to this action was, an English model, actress, host, businesswoman, and one of Great Britain's most famous glamour models. Pinder has featured in publications such as FHM, Nuts, Loaded, The Daily Star, and hundreds of others. Pinder has appeared on FHM's list of the "100 Sexiest Women in the World" in 2005, 2006, and 2007. She was a guest columnist in Nuts, entitled "The Truth About Women" and appeared on the final edition of the Nuts magazine cover. Pinder has collaborated with major brands such as Unilever (Lynx) and Camelot (National Lottery) among others, and on large national and international advertising campaigns. Pinder has an established an acting career with many TV appearances and

Film credits. She has appeared on shows such as I'm Famous and Frightened, Soccer AM, Weakest Link, Nuts Tv (host) MTV's TMF (presenter), Hotel Babylon, and Team and Bo! in the USA. Pinder was also a contestant on Celebrity Big Brother. Pinder starred in films such as The Seventeenth Kind, Age of Kill, and Warrior Savitri. Pinder works closely with a number of Wildlife charities and is involved in fundraising for Tiger Time, The David Shepherd Wildlife Foundation and International Animal Rescue. Pinder has also worked with Help for Heroes appearing in the Hots Shots fund raising calendar and supported Male Cancer Awareness Campaign taking part in their MCAC London Strut awareness initiative. She also visited troops in Afghanistan in 2007. Pinder's own annual calendar continues to be one of the bestselling model calendars years after year and enhances Pinder's status as an elite class of Social Media Influencers with a combined total of over 2 million followers on Facebook, Instagram, and X (formerly known as Twitter).

32.     Upon information and belief, Pinder is depicted in the photo in Exhibit "C" to promote Venu Nightclub on its Instagram page. This Image was intentionally altered to make it appear that Pinder was either an employee working at Venu Nightclub, that she endorsed Venu Nightclub, or that she was otherwise associated or affiliated with Venu Nightclub.

33.     Pinder has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.     Keller is an American fashion model, Influencer, and world traveler. She has modeled for 10 years in 7 different countries and has traveled to over 25 countries. Keller has been featured in top magazines and on covers of Marie Claire, Maxim, Ocean Drive, and Le Fair to name a few. She has walked the runways of New York, London, Sydney and Miami fashion week. Keller has been featured on billboards for Resorts World Las Vegas, The Galleria Mall Dallas, I Saw It First, Body Glove, Benefit Cosmetics, Target, Crystals Mall Las Vegas, and Windsor. She has worked with many top brands such as Fashion Nova, Oh Polly, Guess, Revolve, Benefit

Cosmetics, Tiger Mist, Boohoo, Jeffrey Star Cosmetics, among so many more. Some of Keller's hotel partners are Amilla Resort Maldives, Makanda Hotel Costa Rica, The Little Nell Aspen, Delano Miami, NoMad Las Vegas, Navutu Dreams Resort Cambodia, Anantara Phuket, and Five Palms Jumeriah Dubai. Keller has over 627,000 social media followers.

35.    Upon information and belief, Keller is depicted in the photo in Exhibit "D" to promote Venu Nightclub on its Facebook page. This Image was intentionally altered to make it appear that Keller was either an employee working at Venu Nightclub, that she endorsed Venu Nightclub, or that she was otherwise associated or affiliated with Venu Nightclub.

36.    Keller has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

37.    Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a bachelor's in art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she was nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 52,000 Facebook followers, over 1.6 million Instagram followers, and over 280,000 Twitter followers.

38.    Upon information and belief, Acosta is depicted in the photo in Exhibit "E" to promote Venu Nightclub on related social media accounts. This Image was intentionally altered

to make it appear that Acosta was either an employee working at Venu Nightclub, that she endorsed Venu Nightclub, or that she was otherwise associated or affiliated with Venu Nightclub.

39.     Acosta has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

40.     Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Bésame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically over 500,000 Instagram, Twitter, and Facebook followers.

41.     Upon information and belief,, Davalos is depicted in the photos in Exhibit "F" to promote Venu Nightclub on related social media accounts. These Images were intentionally altered to make it appear that Davalos was either an employee working at Venu Nightclub, that she endorsed Venu Nightclub, or that she was otherwise associated or affiliated with Venu Nightclub.

42.     Davalos has never been employed at Defendant's establishment, has never been hired to endorse Defendant, has never been otherwise associated or affiliated with Defendant, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

///

***Defendant Business Activity and Misappropriation***

43.     Defendant operates (or operated, during the relevant time period,) a Night Club,

where it is (or was) engaged in the business of selling alcohol and food in a sexually charged atmosphere.

44.     Defendant owns, operates, and controls Venu Nightclub's social media accounts, including its Facebook, Twitter, and Instagram accounts.

45.     Defendant used Venu Nightclub's Facebook, Twitter, and Instagram accounts to promote Venu Nightclub's, and to attract patrons.

46.     Defendant did this for its own commercial and financial benefit.

47.     Defendant has used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Venu Nightclub, endorsed Venu Nightclub, or was otherwise associated or affiliated with Venu Nightclub.

48.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Venu Nightclub to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

49.     Defendant was well aware that none of the Plaintiffs have ever been affiliated with or employed by Venu Nightclub, and at no point have any of the Plaintiffs ever endorsed Venu Nightclub or otherwise been affiliated or associated with Venu Nightclub.

50.     All of Defendant's activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs

51.     Defendant has never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

52.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

53.     It is common knowledge in the modeling industry that the hiring of a model for a

commercial purpose involves a particularized methodology and process.

54.    The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

55.    Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

56.    Defendant was aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Venu Nightclub.

57.    Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

58.    In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Venu Nightclub.

59.    At no point was any Plaintiff ever contacted by any Defendant, or any representative of any Defendant, to request the use of any of Plaintiffs' Images.

60.    No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

61.    No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Venu Nightclub's website, Twitter, Facebook, or Instagram accounts.

62.    Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

**FIRST CAUSE OF ACTION**
**(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) - False Association)**

63.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

64.     Section 43 of the Lanham Act, 15 U.S.C. §1125(a)(1)(A) applies to Defendant, and protects Plaintiffs from the conduct described herein

65.     Defendant used Plaintiffs' image in order to create the false impression with the public that Plaintiffs either worked at Defendant's establishment , or endorsed Defendant's businesses. This was done to promote and attract clientele to Defendant's establishment, and thereby generate revenue for Defendant.

66.     Thus, this was done in furtherance of Defendant's commercial benefit.

67.     Plaintiffs are in the business of commercializing their identity and selling their images to reputable brands and companies for profit. Defendant's customers are the exact demographic that view Plaintiffs' images in magazines and online. By virtue of Plaintiffs' use of their image and identify to build their brand, they have acquired a distinctiveness through secondary meaning. Plaintiffs' image either suggests the basic nature of their product or service, identifies the characteristic of their product or service, or suggest the characteristics of their product or service that requires an effort of the imagination by the consumer in order to be understood as descriptive. As such, their brand – the reason their clients seek to hire them – is unique in that it is encompassed in their identity, i.e., their persona.

68.     Both Plaintiffs and Defendant compete in the entertainment industry, use similar marketing channels and their respective endeavors overlap. They vie for the same dollars from the same demographic consumer group.

69.     As such, an unauthorized use of Plaintiffs' image to promote an establishment created an undeniable confusion in Defendant consumers' minds, which lead to competitive injury to Plaintiffs. There is no doubt that Defendant used Plaintiffs' image for advertising

purposes, that is to promote their business enterprises, as such, Defendant's unauthorized and unlawful use of Plaintiffs' image and likeness was an existing intent to commercialize an interest in Plaintiffs' image and likeness

70.     Defendant's use of Plaintiffs' image, likeness and/or identity constitutes a false designation of the source of origin, sponsorship, approval, or association which have deceived Plaintiffs' fans and present and prospective clients into believing that Defendant's establishment advertisements are endorsed by Plaintiffs, or sponsored, approved or associated with Plaintiffs.

71.     Despite the fact that Defendant was at all times aware that Plaintiffs neither worked at, nor endorsed its establishment, nevertheless, they used Plaintiffs' image in order to mislead potential customers as to Plaintiffs' employment at and/or affiliation with Defendant's establishment.

72.     Defendant knew that their use of Plaintiffs' image would cause consumer confusion as to Plaintiffs' sponsorship and/or employment at Defendant's establishment.

73.     Upon information and belief, Defendant's use of Plaintiffs' image did in fact cause consumer confusion as to Plaintiffs' employment at and/or endorsement of Defendant's businesses, and the goods and services provided by Defendant.

74.     As a direct and proximate result of Defendant's actions, Plaintiffs have no control over the nature and quality of the line of products or services provided by Defendant, the nature of the advertisements depicting Plaintiffs' image, likeness and/or identity, or how Plaintiffs' image, likeness and/or identity is being depicted by Defendant.

75.     Further, any failure, neglect or default by Defendant will reflect adversely on Plaintiffs as the believed source of origin, sponsorship, approval or association thereof, hampering efforts by Plaintiffs to continue to protect their reputation for high quality professional modeling, resulting in loss of sales thereof and the considerable expenditures to promote their personal modeling services to legitimate mainstream media, all to the irreparable harm of Plaintiffs.

76.     Due to Defendant's unauthorized use of Plaintiffs' image, Plaintiffs have been damaged in an amount to be determined at trial.

77.     WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendant and grant actual or compensatory damages in an amount to be determined at trial, lost profits, disgorgement of profits earned directly or indirectly by Defendant's unlawful use, attorneys' fees and costs, prejudgment and post-judgment interest, and/or such further relief that is just and proper.

### SECOND CAUSE OF ACTION
**(Common Law Right of Privacy)**

78.     Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

79.     As set forth hereon, Defendant has violated each Plaintiffs' common law right to privacy under Massachusetts law.

80.     Defendant has done so by appropriating each Plaintiff's likeness for commercial purposes without authority or consent.

81.     Defendant invaded and violated Plaintiffs' privacy and misappropriated their likeness by publishing their image and likeness on Defendant's website or related social media accounts as part of Defendant's advertising campaign.

82.     At all relevant times, Defendant's website and social media accounts were used and operated by Defendant for advertising and trade purposes.

83.     Defendant's website and social media accounts were designed to attract business and generate revenue for Defendant.

84.     Plaintiffs are informed and believe and hereon allege that the manner in which Defendant posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendant published their image and likeness

on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

85.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

86.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

87.    Upon information and belief, Defendant's use of

88.    Plaintiffs' image and likeness did in fact attract clientele and generate business for Defendant's business.

89.    At no point did any Defendant ever receive permission or consent to use any Plaintiffs' Image on their website or social media account.

90.    Defendant was at all relevant times aware that they never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote its business.

91.    At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

92.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

///

///

**THIRD CAUSE OF ACTION**

**(Violation of M.G.L. c. 214 § 3A:  Unauthorized Use of**
**Individual's Name, Portrait, or Picture)**

93.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

94.    As set forth hereon, each Plaintiff has and had at the time of Defendant's misappropriation a commercial interest in their image, photo, persona and likeness.

95.    Within Massachusetts, Defendants used  Plaintiffs' image, photo, persona and likeness for advertising, trade, and/or commercial purposes in promotion of their night club.

96.    No Plaintiff ever gave Defendant's written consent, authorization, or otherwise granted permission to Defendant to use their image for any advertising purposes, trade purposes, or any commercial purposes, or any other purpose whatsoever.

97.    Defendant was at all times aware that no Plaintiff ever authorized Defendant to use their image in advertising.

98.    As such, Defendant's misappropriation and publication of each Plaintiffs' image in advertising was knowing and willful.

99.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

100.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

101.    Defendant was at all relevant times aware that it never received any Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendant's business.

102.    At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

103.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

104.    In addition to the actual damages suffered by Plaintiffs based on Defendants' violation of this statute and given Defendant's willful and knowing misappropriation and publication of each Plaintiffs' image, Plaintiffs are entitled to treble damages

## FOURTH CAUSE OF ACTION
### (Common Law Right of Publicity)

105.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

106.    As set forth hereon, each Plaintiff has and had at the time of Plaintiffs' misappropriation a commercial interest in their image, photo, persona and likeness.

107.    Said commercial interest was developed by each Plaintiff through their investment of time, effort and money in their career, image, persona and likeness.

108.    As set forth herein, Defendant used each Plaintiffs' image and likeness for commercial purposes by using same in Blush advertising.

109.    Defendant did so without any Plaintiffs' consent, written or otherwise.

110.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendant republicized Plaintiffs' image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

111.    Plaintiffs are informed and believe and hereon allege that Defendant's republication of Plaintiffs' image and likeness was altered so as to reach a new audience and/or promote a different product.

112.    Defendant was at all relevant times aware that it never received any  Plaintiffs' permission or consent to use their image and likeness on any website or social media account, or on any other medium, in order to promote Defendant's business.

113.    At no point did Defendant ever compensate Plaintiffs for its use of their image and likeness.

114.    No applicable privilege or authorization exists for Defendant's use of Plaintiffs' image and likeness.

115.    In addition, because Defendant's actions in misappropriating Plaintiffs' images and violating their common law right of publicity was willful and outrageous, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(Violation of M.G.L. c. 93A § 11: Unfair Trade Practices)**

116.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

117.    Each Plaintiff, at all relevant times, was engaged in the conduct of a trade or commerce, such that they are considered a "business" under M.G.L. c. 93A.

118.    As set forth herein, Defendant embarked on a campaign of false and misleading advertising in order to convince potential consumers, including those located in Massachusetts, that Plaintiffs worked for, endorsed, or were otherwise associated or affiliated with Defendant's business.

119.    Such methods of advertising were unfair and deceptive, and constituted deceptive and unfair trade practices under Massachusetts law.

120.    Defendant's actions occurred primarily and substantially within Massachusetts.

121.    Defendant was at all times aware that no Plaintiff was an entertainer at, had contracted to endorse or promote, or was otherwise associated or affiliated with Defendant's business, but nevertheless published each Plaintiffs' image.

122.    This was done for Defendant's commercial benefit, and to the detriment of Plaintiffs.

123.    Plaintiffs suffered actual money damages by reason of Defendant's unfair and deceptive advertisements by, inter alia, being deprived those monies Defendant should have paid them for their appearance in Defendant's advertisements.

124.    In addition to actual damages, and in light of Defendant's knowing, willful and repeated attempts to deceive consumers, Plaintiffs are entitled to treble damages, and attorneys' fees and costs, as provided for under this statute.

125.    In addition to actual damages, to Defendant's unfair and deceptive acts may have the effect of causing such loss to each Plaintiffs' business that Plaintiffs are entitled to injunctive relief.

## SIXTH CAUSE OF ACTION
### (Defamation)

126.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

127.    As detailed throughout this Complaint, Defendant has published altered image and likeness of Plaintiffs in order to promote their Defendant's business to the general public and potential clientele.

128.    Defendant's publication of said image and likeness constitutes a representation that Plaintiffs were either employed by Defendants' business, that they endorsed Defendants' business, or that they had some affiliation with Defendant's business.

129.    None of these representations were true.

130.    In publishing Plaintiffs' altered image and likeness, it was Defendant's intention to create a false impression to the general public that Plaintiffs worked at or endorsed Defendant's business.

131.    Defendant was at least negligent in publishing Plaintiffs' image and likeness because it knew, or should have known, that Plaintiffs were not employed by Defendant's business,

had no affiliation with Defendant's business, had not consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

132.    In the alternative, Defendant published the image and likeness of Plaintiffs with actual malice because it knew that Plaintiffs were not employed by Defendant's business, had no affiliation with or consented to the use of their image and likeness, and had not been compensated for the use of their image and likeness.

133.    Despite Defendant's knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' image and likeness to attract clientele and generate revenuefor itself.

134.    Defendant's publication of Plaintiffs' image and likeness constitutes defamation under Massachusetts law because said publication falsely accuses Plaintiffs of having acted in a manner – i.e., working as an entertainer and/or endorsing Defendant's business - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

135.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Massachusetts law because said publication would tend to injure each Plaintiff in their trade, business, and profession as a professional model.

136.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that they were professional entertainers and/or promoting as night club, an inference which Defendant's publication of the image and likeness support.

137.    Defendant's publication of Plaintiffs' image and likeness likewise constitutes defamation per se under Massachusetts law because, insofar as said publication falsely portrays each of the Plaintiffs as an entertainer, it imputes unchastity to them.

## SEVENTH CAUSE OF ACTION
### (Negligence and Respondeat Superior)

138.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

139.    Plaintiffs are further informed and believe and hereon allege that Defendant maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the unauthorized and non-consensual use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

140.    Further, Defendant should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

141.    Defendant owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

142.    Defendant further owed a duty of care to consumers at large to ensure that its promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

143.    Defendant breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

144.    Defendant further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with Federal and Massachusetts law, were not violated. Defendant breached its duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

145.    Defendant's breach was the proximate cause of the harm Plaintiffs suffered when their image and likeness were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

146.    As a result of Defendant's negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

147.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

148.    Each Plaintiff is, and at all relevant times was, the exclusive owners of all right, title and interest in their image and likeness, and have property interests thereon.

149.    By the conduct detailed above, Defendant converted Plaintiffs' property rights in their image and likeness for their own use and financial gain image and likeness for its own use and financial gain.

150.    As a result of Defendant's unlawful conversion of Plaintiffs' image and likeness, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

151.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

152.    As set forth in detail above, Defendant published Plaintiffs' image and likeness in order to promote the Defendant's establishment to the general public and potential clientele.

153.    Defendant's publication was for the purpose of creating a false impression to the general public that Plaintiffs were either entertainers working at or endorsed the Defendant .

154.    Defendant's purpose in publishing Plaintiffs' image and likeness was to benefit commercially due to its purported association with, employment of, and/or endorsement by Plaintiffs.

## TENTH CAUSE OF ACTION
### (Quantum Meruit)

155.    Plaintiffs re-allege each and every allegation set forth in the paragraphs above, and incorporate the same by reference as though fully set forth herein.

156.    Plaintiffs are each internationally known models who earn their livings appearing in, inter alia, commercials, advertisements, and publications on behalf of companies and brands.

157.    Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

158.    Although Defendant has availed itself of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs worked for, endorsed, or are otherwise affiliated with Defendant's business, Defendant have not compensated Plaintiffs.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Plaintiffs respectfully request Judgment in their favor and against Defendant as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' Causes of Action;

(b) For an order permanently enjoining Defendant from using Plaintiffs' Images to promote Venu Nightclub's  Night Club;

(c) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117;

(e) For such other and further relief as the Court may deem just and proper.

/s/ Paul Sullivan
Paul Sullivan, # 634466
Sullivan Law Offices, PC
33 Broad Street, Suite 302
Providence, RI  02903
Tel: 401-861-9900
Fax: 401-861-9977
psullivan@psullivanlaw.com

*and*


/s/ John V. Golaszewski
John V. Golaszewski
New York Bar No. 4121091
**THE CASAS LAW FIRM, P.C.**
1325 Avenue of the Americas, 28th Floor
New York, NY 10019
Tel: 855-267-4457
Fax: 855-220-9626
john@talentrights.law
*Pro Hac Vice Application Forthcoming*


Dated: January 9, 2026